MOSES WANZER and others *v.* GEORGE DE BAUN, Jr.

Recovery of judgment upon a contract is no bar to a separate action, for the deceit originally practiced upon the plaintiff to induce him to become a party to it.

So in an action upon the judgment itself, the defendant may be arrested upon affidavits showing fraud in contracting the original debt, when the fraud was not discovered until after the judgment was recovered.

Accordingly, an order of arrest was sustained on appeal, although the plaintiff had obtained judgment against the defendant in another state, as the endorser of a promissory note given for goods sold to the maker, the suit here having been commenced by summons, and the order moved for upon affidavits showing the recovery of the judgment, and that the original credit was obtained by false representations, by the defendant, of his own and the purchaser's responsibility. No complaint having been drawn, it did not appear whether the plaintiff intended to rely upon the deceit as his cause of action, or to declare on the judgment.

At common law, the creditor was entitled to an arrest of the debtor. The right remains unchanged where the debt was fraudulently contracted, and the exception made by the statute, (see code of procedure, title VII., chap. I, §§ 178, 179, &c,) simply exempts the debtor who is not guilty of fraud.

THE plaintiffs commenced this action by the service of a summons. Before the complaint was drawn, they moved for an order of arrest against the defendant. The affidavits used upon the motion showed that they had obtained judgment against the defendant, as the endorser of a promissory note. That the note was given in payment of a bill of goods sold by the plaintiffs to a third person; and that the sale was procured by the defendant's fraudulent assurances of the responsibility of the purchaser and of himself as a surety for the payment of the debt.

The order of arrest was set aside at special term, and the plaintiff appealed.

*Charles H. Smith,* for the plaintiffs.

*John M. Eager,* for the defendant.

BY THE COURT. WOODRUFF, J.—The facts disclosed by the

affidavit of the plaintiffs appear to me to warrant an order of arrest upon either of two grounds.

*First.* They would sustain an action for fraudulent and deceitful misrepresentation regarding the condition, property and responsibility of the purchaser of the goods, if not also for misrepresentations regarding the defendant's own means.

These representations were relied upon by the plaintiffs. They supposed, and from the representations of the defendant, they had a right to suppose, that they were parting with their property upon the credit of two responsible names, and the result shows that they had not even one.

Recovery of judgment on the *contract* is no bar to an action for the deceit practiced to induce the plaintiffs to make it. Were the plaintiffs now seeking to recover the *specific goods* in repudiation of the *title* of the *vendee*, it might be a good answer that they had affirmed the sale by suing upon the note given for the goods.

But here is no repudiation of the sale. The sale was effectual. The plaintiffs lost their property thereby. They were induced, by the defendant's fraud, to make the sale, and he is justly liable for the damages which they have sustained. It was in one case urged that the vendors in such case ought to sue the vendee, and endeavor to recover from him, *by judgment* and execution, the value of the goods before the action for deceit against the third person would lie, (vide *Kidney* v. *Stoddard,* 7 Met. 252, in which, however, the necessity of such a suit is denied,) but I am not aware of any case countenancing the idea, that a recognition or acquiescence in the sale, when, as in the present case, repudiation could be of no avail, (the goods having been disposed of,) was ever held to bar an action for the fraud through which the plaintiff was drawn into the transaction. The causes of action are entirely distinct, and may each be the subject of an action. Cases may often arise in which the recovery of judgment for the goods, and return of execution unsatisfied, are the first means of discovering the

fraud practiced, and they may very often be the best evidence of the fraud itself.

*Second.* I think the plaintiffs entitled to the order, if the facts in the affidavit are to be used in support of an action on the *judgment.* This action in such case will be for the recovery of a debt—a debt now due by judgment, but none the less a debt. It was contracted by fraud, and through whatever forms the security therefor has passed, the *fraud* is not purged.

Suppose one fraudulently buy on a credit of six months, and although the original purchase be on book account merely, the vendee, on request of the vendor, subsequently gives his note for the amount, it could not, I think, be denied, that on discovery of the fraud, the vendor might have an order of arrest, although the act of taking the note was an affirmance of the sale. So if the new security were a bond.

Or even suppose the sale was made as before, and a judgment confessed to secure the amount, under a stipulation not to issue execution till the expiration of the term of credit.

Most of the suggestions made on the first point above stated, also apply to this. The idea that the debt is now in a judgment, does not appear to me to affect the question. It is a debt still; it was fraudulently contracted, and the fraud is fastened upon it through every form which the evidence of the debt may assume, and the fraud will remain until the debt is paid, released or otherwise discharged.

It is true that the original contract made by this defendant, viz., the contract by endorsement, has become merged in a judgment, and there can now be no inquiry into the consideration of that judgment for the purposes of the question whether or not the defendant is liable thereon. But for the purposes of the merely *collateral* question, whether, in prosecuting the action upon that judgment, the plaintiff shall be entitled *to hold* the *defendant to bail*, the court will look, and, by the plain terms of the code, are, I think, bound to look through and beyond the mere *forms of security* held by the plaintiffs, to the origin of the transaction. (*Clark* v. *Rowling*, 3 Comstock, 229, and cases cited.) They will and ought to regard the *sub-*

*stance* of the plaintiffs' claim, viz., the *debt*, rather than at the form or shell by which it is encompassed, and ask whether the defendant, by his *fraud*, induced the plaintiffs' confidence in which the debt originated. This is no inquiry into *consideration* in the sense in which such inquiry is forbidden, viz., with a view either to impeach or uphold the judgment, nor does it affect the form of action. But the inquiry respects merely a collateral matter, which recent legislation has rendered important. Did the relation of debtor and creditor originate in the defendant's fraud?

At common law, the defendant might, in this case, have been held to bail, *of course*. The statute has abrogated the right to hold to bail, in certain cases, but not where the debt was fraudulently contracted. It results, I think, that where a debt is fraudulently contracted, the right to hold to bail remains to the plaintiff, whatever be the form of his action, and through whatever changes his security may pass until his debt is satisfied or discharged.

The legislature intended to discriminate between the classes of *persons* who should and who should not be held to bail. They did not intend that a *fraudulent* debtor should enjoy the same exemption from imprisonment as the honest though unfortunate citizen, and they did not exempt the *fraudulent* debtor from arrest. This construction appears to me most rational, most in accordance with the spirit and purpose of our non-imprisonment laws; and within their true and proper meaning, I think this defendant is a fraudulent debtor, and liable to arrest. I do not think he can be permitted to say, "True, I defrauded the plaintiffs, but they have recovered a judgment against me, and purged my fraud, by proving, through the return of their execution unsatisfied, the very cheat by which I deceived them."

For these reasons, I think the order appealed from should be reversed. The costs of the appeal, $10, should abide the event of the suit.

Order to vacate arrest reversed.